UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CLARA VASQUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 18-366-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| PASO FINO HORSE ASSOCIATION | ) | **MEMORANDUM OPINION** |
| INCORPORATED, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This case arises out of a dispute between sisters regarding the registration of a Paso Fino horse named Paz Del Suroeste ("the Mare"). [Record No. 1-1] Plaintiff Clara Vasquez ("Clara") asks this Court to declare the rights, status and legal relations between the parties regarding registration of the Mare. [*Id.*] She contends that the Paso Fino Horse Association Incorporated ("PFHA") unilaterally voided registration of the Mare. [*Id.*] Following discovery, the parties filed cross motions for summary judgment. [Record Nos. 59, 60, 61] For the reasons that follow, the defendants' motions for summary judgment will be granted and the plaintiff's motion for summary judgment will be denied.

## I.

Clara and Patricia Vasquez were engaged in a business involving the Mare. The PFHA is a private association that maintains a registry of purebred Paso Fino horses in the United States. PFHA-registered horses are eligible to participate in Paso Fino horse shows and PFHA members are part of a community that provides a forum to learn about, breed,

show, and compete Paso Fino horses. A constitution and rule book govern the PFHA and its members.

The Mare is a purebred Paso Fino horse whose sire (father) is Joyero and dam (mother) is Carinosa Del Suroeste. The parties have not asserted who is the registered owner of Carinosa Del Suroeste. The Mare was born in Colombia and brought to the United States in September 2007 to participate in competitions. She also was registered with the La Federacion Nacional Colombiana De Asociaciones Equinas Fedequinas Y La Asociacion De Criadores De Caballos Criollos Colombianos de Silla Asdesilla (the "Fedequinas"). Like the PFHA, the Fedequinas is a private association that provides a registry for Paso Fino horses in Colombia. The Fedequinas registration identifies the Mare's owner as Criadero Villa Del Suroeste (the "farm"). The farm is owned by Defendant Patricia Vasquez ("Patricia").

To register a horse with the PFHA, an applicant must submit a registration application which provides basic information about the horse such as its owner and lineage. Additionally, a registrant must provide a DNA sample which enables the PFHA to verify bloodlines. The PFHA's rules provide that if the applicant horse, its sire, and/or its dam, is already registered with another association recognized by the PFHA Board of Directors, copies of the certificates of registration from the accepted registry must be provided with the application. [Record No. 61-5, p. 161] Further, "the applicant horse must be registered in the name of the recorded owner or lessee of the dam at the time of foaling." [*Id*. at 166.] The PFHA also maintains ownership of the certificate of registration and the certificate is issued in reliance on the information provided by the written application. Submitting an

application is dependent on the express condition that the PFHA has the privilege to correct and/or cancel the certificate for cause under its rules. [*Id*. at 49.] The original registration certificate endorsed by the seller must be provided to the PFHA to transfer the recorded ownership of a horse that is already registered with the PFHA. [*Id*. at 176-77.] Alternatively, to transfer the record of ownership at the time of registration, a transfer of ownership must be provided as part of the application. [*Id*.]

A. Initial Registration of the Mare with PFHA

Clara submitted a registration application to the PFHA for the Mare to allow the Mare to participate in PFHA exhibitions in the United States. Because Clara submitted a registration application and is a member of the PFHA, she agreed to be bound by all rules, decisions, and actions of the PFHA. This included the rules regarding registration. [Record No. 61-5, p. 158]

Because the Mare was already registered in Colombia with the Fedequinas, the Fedequinas certificate was provided together with the application. [Record No. 61-3, p. 4-5] While the Fedequinas certificate listed the farm as the owner of the Mare, Clara's application to the PFHA listed both Clara *and* Patricia as original co-owners but did not include the farm. [*Id*. at p. 3.] Further, the transfer section on the application for registration was blank. [*Id*.] However, the PFHA rule book indicates the transfer section is to be completed if the recorded owner of the dam at the time of foaling is different from the current owner of the foal. [Record No. 61-5, p. 176]

After reviewing the application, the PFHA issued a certificate of registration in January 2008, recognizing the Mare as having proper Paso Fino lineage. While it is

undisputed that Clara did not own the Mare's dam at the time of foaling and no transfer of ownership was provided in the PFHA application, the certificate listed Clara and Patricia as co-owners.

B. <u>The Ownership Dispute</u>

The PFHA rules provide that a hearing may be held if a complaint is filed and the PFHA determines that there is a significant likelihood that a violation of a rule has occurred. [Record No. 61-5, p. 50] PFHA President Sharon Londono traveled to a show in Colombia where Patricia informed her of an ownership dispute regarding the Mare. [Record No. 61-1, p. 8] Patricia gave Londono a partially-completed Official Charge/Protest along with other documents claiming that her signature on the application was forged. [Record No. 61-9] Londono then submitted Patricia's documents to PFHA's Executive Director Bill Nelson for the purpose of investigating the allegation. [Record No. 61-11, p. 11] Nelson reviewed the documents and passed them on to PFHA Registrar Rebecca Steigmeyer for further review. [Record No. 61-2, p. 9] The inquiry into Patricia's documents led to the discovery of the error regarding ownership in the Mare's certificate of registration. Upon discovering the error, Steigmeyer recommended that the original certificate of registration be corrected and reissued as it should have been in 2008. [Record No. 61-13]

After correcting the certificate of registration and changing the registered ownership to the farm, the PFHA wrote to the sisters to inform them of the error in the initial certificate and advise that a new certificate was being issued. [Record No. 61-15] Clara subsequently filed a complaint with the PFHA and the PFHA scheduled a hearing before its internal

hearing committee to address the registration issues. [Record No. 61-16] Prior to the hearing, however, Clara filed this action seeking a declaration that the original registration certificate be reinstated, naming the sisters as owners of the Mare. But pursuant to the policy of the PFHA, the internal hearing was canceled due to the pending litigation. [Record No. 61-18]

C. PFHA Rules Regarding Hearings

The PFHA rules provide that a member may request a hearing after cancellation of a certificate of registration or a decision to deny registration. [Record No. 61-5, pp. 176, 182] If a member requests a hearing under these circumstances, the rules indicate that a hearing will be held by the association's hearing committee. [*Id.*] Alternatively, the rules prove circumstances under which a hearing is required. Any person may file a complaint if he or she believes that another individual has violated any PFHA rule. [Record No. 61-5, p. 50] And following the filing of such complaint, the executive director or his staff is required to investigate the allegation to determine whether sufficient cause[1] exists for a hearing. [*Id.*] If sufficient cause exists to convene a hearing, no other association entity may cancel the hearing, and the hearing committee must conduct it. [*Id.*]

**II.**

Summary judgment is appropriate if there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding*

---

[1] Sufficient cause is defined as a significant likelihood that a violation of a rule or written policy occurred. [*Id.*]

*Co.*, 285 F.3d 415, 424 (6th Cir. 2002). In determining whether summary judgment is proper, the Court may not make credibility determinations or weigh the evidence. Instead, the Court's role is to simply determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

In conducting this inquiry, the Court must consider all reasonable inferences and view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, a dispute over a material fact is not genuine unless a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 251-52. The existence of a scintilla of evidence in favor of the nonmoving party is not enough to avoid summary judgment. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 252). Finally, it is worth noting that the standard upon which the court evaluates a motion for summary judgment does not change simply because the parties present cross-motions. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

## III.

### A. Declaratory Judgment

Clara seeks a declaratory judgment regarding the rights of the parties related to the Mare at issue. A court may declare the rights of any interested party whether other relief is or could be sought. 28 U.S.C. § 2201. The question essentially is "whether the facts

alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy [] to warrant the issuance of a declaratory judgment." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969). The Declaratory Judgment Act "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). As a result, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."[2] *Id.* at 282.

Five factors are considered in determining whether a case is appropriate for declaratory judgment. They are: "(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for res judicata,' (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective." *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). Because the Court has discretion to determine whether to entertain a declaratory judgment claim, the Court must consider the five factors presented in *Grand Trunk* and all other relevant considerations. *Bhd. Mut. Ins. Co. v. United Apostolic Lighthouse, Inc.*, 200 F. Supp. 2d 689, 692 (E.D. Ky. 2002).

---

[2] The plaintiff's claims exceed $75,000.00 exclusive of costs and interest and meets the jurisdictional requirements of 28 U.S.C. § 1332.

The Court should decline to issue a declaratory judgment if it does not "terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding." *Grand Truck W. R.R. Co.*, 746 F.2d at 326. Here, Clara seeks a declaratory judgment regarding the rights, status, and legal relations of the parties as to the registration of the Mare. While it appears that there is a parallel controversy regarding the actual ownership of the Mare and the alleged forgeries that may have occurred between the sisters, a declaratory judgment would afford relief regarding the rights and interests of the parties relating to the registration of the Mare which is the controversy presented in this action. Additionally, a declaratory judgment regarding the registration of the Mare would not interfere with any potential proceedings related to the actual ownership of the Mare because registered ownership is not equivalent to actual ownership under the PFHA rules. Accordingly, the first two factors indicate the case is appropriate for declaratory relief.

The Court, however, should not entertain a declaratory judgment claim if the action's purpose is procedural fencing or res judicata. The PFHA asserts that this action is being used for this purpose because there are cases presently pending in Columbia regarding the actual ownership of the Mare. And it further contends that, while registered ownership is not equivalent to actual ownership, a declaration in this Court in favor of Clara can be used by her in Columbia to assert actual ownership and an entitlement to proceeds from the sale of the Mare's offspring. However, this factor "is meant to preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of

acquiring a favorable forum." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 558 (6th Cir. 2008) (citing *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)).

Because there is no indication that Clara filed this action to acquire a favorable forum, and because a court in Columbia could not adjudicate the issue of registration with the PFHA, there is no indication that procedural fencing has occurred. Further, a court in Columbia is not bound by this Court's decision and has the discretion regarding whether to take it into consideration for separately pending litigation. Additionally, procedural fencing is addressed with a potential state court case, "when the plaintiff has filed [her] claim after the state court litigation has begun, we have generally given the plaintiff the benefit of the doubt that no improper motive fueled the filing of the action." *Id.* (internal quotations and citations omitted). Based on the foregoing, the Court concludes for purposes of the present motion that no procedural fencing has occurred.

Next, the fourth factor does not influence this Court's decision. This case would not encroach on state jurisdiction since the related cases involving the sisters are pending in Columbia and Columbia does not have jurisdiction over the issue of registered ownership with the PFHA.

The PFHA argues the fifth factor weighs in favor of denying consideration of the declaratory judgment claim because Clara could file suit against only Patricia to resolve the dispute regarding the actual ownership of the Mare. However, this is not a better or more effective alternative remedy because it would not resolve the dispute regarding the registration of the Mare with the PFHA. Further, Clara initially filed this action in state court in Florida. The PFHA subsequently removed it to the United States District Court

for the Southern District of Florida. After removal, the PFHA filed a motion to transfer the case to this Court pursuant to a valid and enforceable forum selection clause in the PFHA's rules. Therefore, the PFHA ultimately determined that this Court was the best forum for the action. As a result, the Court will not use the PFHA's choice of forum against Clara.

In summary, four of five factors considered by this Court weigh in favor of considering the declaratory judgment claim and the remaining factor is inapplicable. Therefore, the Court concludes that consideration of the declaratory judgment claim is appropriate.

### B. Court Interference with the Association's Decision

The PFHA's decision regarding the registered ownership of the Mare was a private association's action based upon its rules and constitution. Generally, voluntary associations may adopt reasonable rules for governing members and may enforce compliance with those rules. *Louisville Bd. of Fire Underwriters v. Johnson*, 119 S.W. 153, 157 (Ky. 1909). "[C]ourts will not interfere to control the administration of the laws of a merely voluntary association, or to enforce the rights springing therefrom, but such organizations must be left to enforce their rules and regulations by such means as they may adopt for their government, and no relief will be granted until the remedies within the body have been exhausted." *Bhd. of R.R. Trainmen v. Williams*, 277 S.W. 500, 503 (Ky. 1925). Inasmuch as the PFHA is a voluntary association, judicial relief from this Court is not available unless Clara demonstrated a substantial probability that the PFHA acted

arbitrarily and capriciously in its decision. *Nat'l Collegiate Athletic Assoc. v. Lasege*, 53 S.W.3d 77, 83 (Ky. 2001).

To evaluate whether the PFHA's decision regarding the registered ownership is arbitrary and capricious, the Court must determine whether the decision was 'clearly erroneous'. *Id*. at 85. A clearly erroneous decision is one that is "unsupported by substantial evidence." *Id*. "Substantial evidence has been defined as evidence which has sufficient probative value to induce conviction in the minds of reasonable people." *Ky. Unemployment Ins. Comm'n v. Cecil*, 381 S.W.3d 238, 245 (Ky. 2012). "The substantial evidence standard presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Z.H. v. Ky. High Sch. Athletic Ass'n*, 359 F. Supp. 3d 514, 525 (W.D. Ky. Jan. 11, 2019) (citing *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988)).

It is important to reiterate that Clara is not asking this Court to determine actual ownership of the Mare. She simply requests that the Court declare the rights, status and legal relations between the parties regarding the Mare's registration.

i.    The PFHA Rules

The PFHA made its decision regarding the registered owner of the Mare based upon the rules related to the registration of a horse with the PFHA registry. Because Clara is a member of the PFHA, she agreed to be bound by the rules, decisions and actions of the PFHA, including the rules concerning registration. [Record No. 61-5, p. 158]

Initially, the PFHA rules state that ownership of a Certificate of Registration belongs to the PFHA. Issuance of the certificate is in reliance upon the information provided in the

application and is made upon the express condition that the PFHA may correct and/or cancel the certificate for cause under its rules. [*Id*. at 49] The rules explain that "all information furnished to the Association in connection with any Registry transaction or activity must be true and correct." [*Id*. at 159] The rules also clarify that "the applicant horse must be registered in the name of the recorded owner or lessee of the dam at the time of foaling." [*Id*. at 166] Further, "if an applicant horse and/or its sire and/or dam are registered with an Accepted Registry other than the [PFHA], copies of their Certificates of Registration from the accepted registry must accompany the Registration Application."[3] [*Id*. at 161]

Finally, a hearing may be held after the cancellation of a certificate of registration or a decision to deny registration if a member requests a hearing. [*Id*. at 176, 182.] Alternatively, under the disciplinary procedures section of the rules, a complaint may be filed by any person who believes another individual has violated any rule or policy of the PFHA. [Record No. 61-5, p. 50] If the PFHA determines that there is a significant likelihood that a violation of a rule has occurred, the hearing committee must conduct a hearing.

ii.    The PFHA's Interpretation of the Rules

The PFHA interpreted the rules as allowing it to correct the original certificate of registration regarding the registered owner. While Patricia filed a complaint with the

---

[3] This is under the Pedigree Eligibility section, not the recorded ownership section. There is no indication that the sire and dam were registered with the PFHA or an accepted registry other than the PFHA. Further, it does not appear that copies of the sire and dam's certificates of registration from another accepted registry were provided in the registration application for the Mare.

PFHA regarding the registered ownership of the Mare, the PFHA asserts that it corrected the certificate of registration to fix an error in the original certificate. Accordingly, while Patricia's complaint caused the PFHA to look at the certificate of registration, once the error was discovered, the PFHA was entitled to correct the certificate. Further, the PFHA contends that the rules do not require a hearing prior to the PFHA correcting a certificate.

### a. Procedure for Changing Certificate of Registration Ownership

Clara asserts that the most reasonable reading of the rule relating to the PHFA's ability to correct the certificate of registration for cause under the rules is the process outlined in the disciplinary sections requiring a hearing after a complaint is filed if the executive director determines that sufficient cause exists for a hearing. However, the standard for determining whether a decision was arbitrary and capricious is not whether an association's decision was the most reasonable decision. Instead, it is whether the decision was clearly erroneous. In other words, while a decision may not have been the 'most reasonable,' that does not mean it was clearly erroneous. *Nat'l Collegiate Athletic Assoc.*, 53 S.W.3d at 85. A reasonable reading of the rules indicates that a hearing is not required for a change to the certificate of registration.

The PFHA's interpretation is reasonable because the disciplinary procedure section requiring a hearing does not address changes to a certificate of registration. Instead, the disciplinary procedure section indicates that a punishment for violation of the PFHA rules is revocation of participation privileges and/or a fine, not changing a certificate of registration. Thus, a reasonable interpretation of the rule is that the disciplinary procedures section requiring a hearing after a complaint does not require a hearing prior to a change

in the certificate of registration. Additionally, the section addressing a violation involving a certificate of registration provides that a certificate may be changed for good cause. [Record No. 61-5, p. 49] Because the disciplinary procedures section does not require a hearing prior to a change in the certificate of registration, and the section addressing a violation related to a certificate of registration proves that it may be changed for good cause, the PFHA's decision not to hold a hearing regarding the certificate of registration is supported by substantial evidence and, therefore, is not clearly erroneous.

Alternatively, Clara asserts that even if a hearing was not required by the rules, the proper process to correct the registration would have been for the PFHA to request a return of the original certificate of registration. However, while the rules indicate that "no person shall refuse an Association request for the return of a Certificate of Registration," the rules do not indicate that the PFHA is required to request the return of a certificate of registration to make changes to ownership. Conversely, the certificate of registration must be returned to the PFHA for changes related to color or markings; castration; name change; sire, dam, or foaling date; or death. While those are changes to the certificate of registration, they do not provide for changes in ownership.

Accordingly, the PFHA may request the return of a certificate and the member must comply with this request, but the rules do not indicate that the PFHA is required to request that the certificate be returned for a change in ownership. As a consequence, the PFHA's decision not to request the return of the certificate of registration is supported by substantial evidence and is not clearly erroneous.

### b. Removing the Sisters as Registered Owners

The PFHA did not consider actual ownership of the Mare in its decision to change the certificate of registration and remove the sisters as registered owners. Instead, the association used the certificate of registration from the Fedequinas to determine the proper registered owner of the Mare. The PFHA concluded that when a certificate is provided from an accepted registry, the certificate from the accepted registry is transferred to the PFHA registry. Because the Fedequinas indicated that the farm was the Mare's registered owner, the PFHA changed the registered owner to the farm. But the rules do not provide for this procedure. Instead, they provide that when a horse is registered with an accepted registry, the certificate of registration from the accepted registry must accompany the PFHA application for registration. This requirement is under the section of the rules to determine pedigree eligibility and there is no indication that the certificate from the accepted registry shall be used for all of the information on the PFHA registry. Instead, the rules state that the applicant horse must be registered in the name of the owner of the dam at the time of birth.

Because the rules do not permit the transfer of the accepted registry certificate to the PFHA, substantial evidence does not support the PFHA's decision to transfer the registered owner from the Fedequinas to the PFHA registry. Further, because the PFHA places such an emphasis on the rule that an applicant horse must be registered in the name of the owner of the dam, it appears that their decision to name the farm as the registered owner of the Mare is not supported by substantial evidence. There is no indication that the Fedequinas requires the registered owner to be the registered owner of the dam at the time

of the applicant horse's birth. Additionally, if the farm was not the registered owner of the dam at the time of the Mare's birth, there is no indication that the Fedequinas required the same or similar procedure to transfer ownership as the PFHA. Accordingly, while the PFHA puts strong emphasis on the proper registered owner, its decision to change the registered ownership of the Mare to the farm is not supported by substantial evidence.

Conversely, the PFHA's decision to remove the sisters as a registered co-owners of the Mare is supported by substantial evidence. Clara admits that she never owned the Mare's dam and was not the registered owner of the Mare's dam at the time of birth. Instead, Clara stated that Patricia or Patricia's husband owned the dam. [Record No. 61-17, p. 8] Accordingly, Clara is not the proper initial registered owner of the Mare.

Taking the facts in the light most favorable to Clara, the Court will assume that a portion of the rights to the Mare were sold to Clara. Because Clara is not the proper initial registered owner of the Mare, a transfer of ownership was necessary. If the assumed sale occurred prior to the registration with the PFHA, Clara needed to fill out the transfer section of the application for registration indicating that ownership had been transferred from the initial owner prior to registration. [Record No. 61-5, p. 176-77] Alternatively, if the assumed sale occurred after the Mare was registered, Clara would have needed to provide the PFHA with the original certificate of registration properly endorsed; Clara's information including her name, address, and membership number; the date of transfer; and payment of the transfer fee. [*Id*.] Because Clara's name was on the initial application for registration as an owner, the Court will assume that the alleged sale occurred prior to the initial registration. Clara admittedly did not own the Mare's dam at the time of the

Mare's birth, and Clara did not fill out the proper forms to transfer ownership at the time of registration. Therefore, the PFHA's decision to remove the sisters as a registered co-owners is supported by substantial evidence.

Clara also argues that an analysis of how the Mare should have been registered originally is irrelevant because the PFHA registered the Mare and issued a certificate of registration listing the sisters as co-owners. However, Clara is mistaken regarding the relevance of the proper original registration. The PFHA has a duty under its rules to maintain an accurate registry in accordance with the rules. And because the initial registered ownership of the Mare was not correct under the rules, the PFHA had good cause and was entitled to change the certificate. Alternatively, Clara could have presented information that she filed with the PFHA for a transfer of ownership, but she failed to do so. Accordingly, the way the Mare initially should have been registered is relevant because without a demonstration that Clara provided the PFHA with the proper transfer of ownership information, the registered ownership should be with the owner of the dam at the time of the Mare's birth as required by the rules.

Clara next contends that the dispute regarding actual legal ownership of the Mare is important because it establishes the unreasonableness of PFHA's action in removing her as the recorded owner of the Mare. The PFHA's rules, however, clearly establish that actual ownership is not equivalent to recorded ownership on the registry. [Record No. 61-5, p. 169] For example, when a foal is born, the registered owner is initially the owner of the dam, regardless of who actually owns the foal. [*Id*. at p. 166.] The registered ownership can then be transferred to the actual owner of the foal following procedures provided by

the association. Therefore, until Clara follows the PFHA's procedures regarding transfer of the recorded ownership, the PFHA's decision is not clearly erroneous. Accordingly, the PFHA's decision to remove the sisters as registered owners of the Mare is supported by substantial evidence. It is not arbitrary or capricious.

## C. Failure to Exhaust Association's Remedies

The Court will not grant relief "until the remedies within the [association] have been exhausted." *Bhd. of R.R. Trainmen*, 277 S.W. at 503; *see also Braddom v. Three Point Coal Corp.*, 157 S.W.2d 349, 352 (Ky. 1941) (explaining that a member of a voluntary association must use available internal methods of settlement before resorting to the Court). Clara failed to exhaust the remedies offered by the PFHA because she did not attend a hearing before the hearing committee. The PFHA scheduled a hearing, but Clara filed suit prior to the hearing and it was canceled. Accordingly, even if the PFHA's decision to remove the sisters as registered owners of the Mare is arbitrary and capricious (it is not) Clara has not exhausted all available remedies, so the Court will not grant relief.

## D. Injunctive Relief

Clara asks the Court for injunctive relief in her motion for summary judgment. Specifically, she requests that the Court reinstate the original registration certificate naming the sisters as owners of the Mare. However, Rule 8(a)(3) of the Federal Rules of Civil Procedure requires that the pleading (in this case, the Complaint) must contain the type of relief sought. Clara's request for injunctive relief was not contained in her Complaint. Instead, it was first introduced in her motion for summary judgment. While Clara's Complaint includes a request for "any other relief this court deems appropriate," the Court

will not present the plaintiff's claim for her. Additionally, while Clara asserts injunctive relief should be granted, she does not provide an argument demonstrating why such relief is appropriate. Specifically, she fails to address the factors the Court must consider before granting such relief.

Ultimately, it was unnecessary for Clara to include a specific request for injunctive relief in her Complaint because her claim for injunctive relief would be unsuccessful. In determining whether to issue a permanent injunction, the Court considers whether: (1) the plaintiff has prevailed on the merits of her claims; (2) the plaintiff will suffer irreparable injury if the permanent injunction is not issued; and (3) the balance of the equities weighs in favor of the entry of the permanent injunction." *Rankin v. United States Dep't of Agric.*, No. 00-90, 2000 U.S. Dist. Lexis 8843, at *4 (E.D. Ky. Mar. 30, 2000).

Here, the plaintiff has not prevailed on the merits of her claims. Additionally, she will not suffer irreparable injury by the denial of injunctive relief. If Clara is able to demonstrate to the PFHA that a transfer of ownership is appropriate, she will be reinstated as a registered owner on the PFHA registry and may be able to sue for lost proceeds regarding the sale of the Mare's embryos that may be sold while she is not a registered owner.

Next, the balance of the equities does not weigh in favor of entry of a permanent injunction. If the Court forces the PFHA to reinstate Clara as a registered owner of the Mare, the PFHA would be harmed because its control of the registry, ability to enforce its rules, and accuracy of its registry would be undermined. Alternatively, if Clara is the rightful owner of the Mare and the Court does not require that the PFHA reinstate her

registered ownership, she would suffer minimal harm and would be able to sue for any lost proceeds during the period of time that she was removed from the registry. For these reasons, Clara is not entitled to a permanent injunction reinstating the initial certificate of registration listing the sisters as owners of the Mare.

### E. PFHA's Attorney's Fees and Costs

The PFHA has requested that the Court reserve jurisdiction to award fees and costs as permitted by the PFHA rule book. [Record No. 61-1, p. 4] The American Rule governing the award of attorney's fees provides that attorney's fees "are not ordinarily recoverable in the absence of statute or enforceable contract providing therefor." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967). Accordingly, the Court will reserve its determination regarding whether PFHA is entitled to attorney's fees and costs – as well as the potential amount of fees and costs – until after the defendant's tender appropriate information in support.

### IV.

For the reasons discussed above, it is hereby

**ORDERED** as follows:

1. The plaintiff's motion for summary judgment [Record No. 60] is **DENIED**.

2. The defendants' motions for summary judgment [Record Nos. 59, 61] are **GRANTED**.

3. Defendant Paso Fino Horse Association shall submit arguments and evidence regarding their request for attorney's fees and costs within **fourteen (14) days**. Thereafter,

the plaintiff shall have **fourteen (14) days** to file any objections to the defendant's submission.

4.     The trial previously scheduled to begin on Monday, July 15, 2019, is **CANCELED**.

Dated: June 26, 2019.

Signed By:

*Danny C. Reeves*

**United States District Judge**