UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CLARA VASQUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 18-366-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| PASO FINO HORSE ASSOCIATION | ) | **MEMORANDUM OPINION** |
| INCORPORATED, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Plaintiff Clara Vasquez ("Clara") sued the Paso Fino Horse Association ("PFHA") and her sister Patricia Vasquez ("Patricia") seeking a declaration of the parties' rights concerning the mare Paz del Suroeste ("the Mare"). The parties filed cross-motions for summary judgment on April 1, 2019. The Court denied Clara's motion for summary judgment and granted the defendants' motion, concluding *inter alia* that Clara had not exhausted her remedies through the PFHA. [Record No. 82] The PFHA has now filed a motion for attorney's fees. [Record No. 84]

**I.**

The American Rule provides that "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts LLP v. ASARCO LLC*, 135 S. Ct. 2158 (2015); *Griffin Indus., Inc. v. EPA*, 640 F.3d 682, 685 (6th Cir. 2011). Clara is obligated to pay its attorney's fees based on the parties' contractual agreement.

The PFHA is a nonprofit organization formed in 1972 "to promote the Paso Fino horse and to maintain the integrity of the Registry of the PFHA." [Record No. 61-5, pp. 2, 18] Clara

has been a member of and has registered horses with the PFHA for more than twenty years. [Record No. 1-1, ¶ 7] Clara and Patricia purchased the Mare in Colombia in 2005. [Record No. 61-17, p. 5] The Mare was originally registered with Fedequinas, a Colombian equine association. The sisters subsequently brought the Mare to the United States and registered her in 2008 with the PFHA. *Id.* at p. 7.

The PFHA registration application includes the following statement: "I am aware of and agree to abide by the rules and procedures of the Paso Fino Horse Association and its Registry." [Record No. 61-3, p. 3] Clara signed the registration application just below this provision. The PFHA Rulebook indicates that "[a]ll members in good standing shall . . . obey and be bound by the Constitution and Rules and regulations of the Association." [Record No. 61-5, p. 22] The Rulebook also provides:

> **Reimbursement for Costs in Unsuccessful Challenge to Association, Venue for Legal Action.**
>
> The Association has adopted the following provision for the mutual benefit of the members and with the intention of reducing the Association's litigation expenses, which expenses would ultimately be borne by members and nonmembers participating in Association activities. Every member, by joining the Association, or nonmember, by purchasing Paso Fino horses, filing a registration application or other documents with the Association, or participating in Association approved events, does thereby agree as follows:
>
> 1. If unsuccessful in an attempt to overturn Association decision[s], actions, rules or regulations, to reimburse the Association for its reasonable attorney's fees, court costs and other expenses in defense of such suit; and
> 2. That he/she will not commence any action, whether in law or equity, against the Association in any courts other than those federal and state courts located in the state of **Kentucky**.

Rulebook IX, J (emphasis in original). [Record No. 61-5, pp. 56-57]

The PFHA contends that Clara's membership and/or registration of the Mare constitutes a binding agreement to pay attorney's fees. But Clara contends that she should not be required to pay the PFHA's attorney's fees, notwithstanding the language quoted above.

II.

Clara first argues that the parties did not enter into a valid contract. The elements of a contract are offer and acceptance, full and complete terms, and consideration. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. Ct. App. 2002). The PFHA has provided a signed registration application in which Clara agreed to abide by the PFHA's rules. Such an application constitutes an offer. *See, e.g., Guilbert v. Phillips Petroleum Co.*, 503 F.2d 587 (6th Cir. 1974). The PFHA accepted Clara's offer by registering the Mare. Further, the parties exchanged consideration because Clara paid a registration fee in exchange for registering the Mare with the PFHA. There is no suggestion the parties' agreement lacked full and complete terms, as both the registration application and Rulebook are highly detailed.

Next, Clara suggests that she is not bound by the PFHA's rules because she did not receive a copy of the Rulebook when she became a member of the PFHA. However, Clara does not allege that she had not been provided a copy of the Rulebook by the time she registered the Mare in 2008. Regardless, "[a] fundamental rule of contract law holds that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Conseco Fin. Serv. Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001). Clara explicitly agreed to be bound by the PFHA's rules when she applied to register the Mare. And even if Clara did not possess a copy of the Rulebook in 2008, there is no suggestion that she requested a copy and was

denied it or otherwise did not have an opportunity to read the rules. Accordingly, not receiving a copy of the Rulebook is not a reason to set aside the parties' agreement.

Clara also suggests that the contract is invalid because it was drafted by the PFHA and she did not have an opportunity to negotiate its terms. However, "take-it-or-leave-it" contracts drafted by one party, without the other party's input, are not per se improper. *Conseco Fin. Serv. Corp. v. Wilder*, 47 S.W.3d 335, 342 n.20 (Ky. Ct. App. 2001). Accordingly, the allegation that the parties' agreement constitutes an adhesion contract is not a sufficient basis for invalidating the agreement. Additionally, it appears that Clara was eligible to vote, hold office, and propose changes to the PFHA's rules, so her suggestion that she had no ability to influence the rules is without merit. [*See* Record No. 61-5, p. 22]

It is well-established that contracts of adhesion may be invalid when the contain confusing language or oppressive terms hidden in fine print. *Schnuerle v. Insight Comms. Co., L.P.*, 376 S.W.3d 561, 576 (Ky. 2012). Here, the provision providing for attorney's fees is printed in sufficiently large text, which is the same size and font as the other text in the Rulebook. Further, "Reimbursement for Costs in Unsuccessful Challenge to Association" appears in bold print. These provisions appear in pages 39-40 of the Rulebook and are clearly referenced under "Attorney's Fees" in the index. [Record No. 61-5, pp. 56-57, 189]

Clara also contends that provisions for unilateral attorney's fees must be a product of the parties' negotiations; otherwise, they are contrary to public policy and unenforceable. Several states have enacted legislation overriding contractual provisions which provide that

only one party may recover attorney's fees. *See, e.g.*, Cal. Civ. Code § 1717; Wash. Rev. Code § 4.84.330; Fla. Stat. Ann. § 57.105(7).[1] Kentucky is not one of those states.

It appears that only one Kentucky court has issued an opinion addressing a provision for unilateral attorney's fees. Truitt Roofing Company had agreed to perform certain improvements to a building owned by LJM. *LJM 12, LLC v. H.C. Truitt Co.*, 2010 WL 4860375 (Ky. Ct. App. Nov. 12, 2010). Despite Truitt's full performance, LJM failed to render full payment for the services. The parties' contract provided that Truitt could recover reasonable attorney's fees incurred in collecting payment. *Id.* at *3.

The trial court awarded Truitt $21,135.84 in attorney's fees based on the contractual provision. LJM argued on appeal that the unilateral attorney's fees provision should not have been enforced because it was contrary to public policy. However, the Kentucky Court of Appeals affirmed the award pursuant to KRS § 411.195, which provides that "[a]ny provision in a writing which create[s] a debt, or create[s] a lien on real property, requiring the debtor, obligor, lienor, or mortgagor to pay reasonable attorney's fees incurred by the creditor, oblige or lienholder in the event of default, shall be enforceable . . . ." *Id.* at *3. The court did not comment on LJM's argument that the unilateral fee provision was contrary to public policy.

It is a well-settled principle of contract law that courts should not enforce contracts in contravention of public policy. *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 879-80 (Ky. 2013). But "[c]ourts will not disregard the plain terms of a contract between private parties on public policy grounds absent a clear and certain statement of strong

---

[1] For example, Florida's statute provides that "[i]f a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract."

public policy in controlling laws or judicial precedent." *Id.* at 880. Public policy, used to bar the enforcement of a contract, "is not simply something courts establish from general considerations of supposed public interest, but rather something that must be found clearly expressed in the applicable law." *Id.* (quoting *Ky. Farm. Bureau Mut. Ins. Co. v. Thompson*, 1 S.W. 475, 476-77 (Ky. 1999)).

The plaintiff has not identified any controlling authority indicating that the provision for attorney's fees should not be enforced.[2] Instead, she relies on non-controlling case law for the proposition that "a contractual provision awarding the prevailing party's attorney's fees is enforceable only if it was arrived at through 'equal bargaining power.'" [Record No. 86, p. 6, citing *Wilborn v. Bank One Corp.*, 906 N.E.2d 396 (Ohio 2009).] Although the Court is not bound by this authority, it notes that the plaintiff's conclusion regarding unequal bargaining power is not as clear cut as she suggests. *See Wilborn*, 906 N.E.2d at 400-01 (discussing a large financial lending institution contracting with individual home mortgage borrowers).

Unlike the defendant in *Wilborn*, the PFHA is a relatively small, nonprofit association. Clara is an experienced horsewoman who has owned and registered Paso Fino horses for more

---

[2] Clara's reliance on *Nottingdale Homeowners' Ass'n, Inc. v. Darby*, 514 N.E.2d 702 (Ohio 1987) is misplaced. Darby purchased a unit in the Nottingdale Condominium development. Upon purchasing the unit, Darby "freely agreed to be bound by the terms of [a] condominium declaration," which provided that the homeowners' association was entitled to recover its reasonable attorney's fees in any action to collect delinquent assessments. *Id.* at 706. Darby later defaulted on the required assessments but objected when the homeowners' association sought the attorney's fees incurred in collecting them. The Ohio court determined that the contractual agreement for attorney's fees was valid because it "was assented to in a non-commercial setting by competent parties with equal bargaining positions and under neither compulsion or duress." *Id.* at 705.

than 20 years. [Record No. 1-1, ¶ 7] She paid 50 million pesos for a one-half interest in the Mare and, at the time of her deposition, owned five Paso Fino horses. [Record No. 61-17, p. 4] Four of the horses were registered with the PFHA, and she planned to register the fifth horse when it reached a suitable age. She also owned a horse breeding business in Ocala, Florida. *Id.*

Contracts voluntarily made between competent persons will not be set aside lightly. Instead, "the usual and most important function of courts is to enforce and maintain contracts rather than to enable parties to escape their obligations on the pretext of public policy or illegality." *Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 654 (Ky. 2007) (quoting *Jones v. Hanna*, 814 S.W.2d 287, 289 (Ky. Ct. App. 1991)). Based on the foregoing, the plaintiff has not identified any basis for setting aside the contractual agreement for attorney's fees.

### III.

Clara claims that the provision allowing the PFHA to recover attorney's fees does not apply in this case because she did not "attempt to overturn Association decision[s], actions, rules or regulations." Instead, she contends, she simply sought a declaration of the parties' rights, status, and legal relations with respect to the Mare. The Court will not elevate form over substance. Clara argues that her claims, if successful, would not have required to the PFHA to "do anything." However, her obvious goal was to have the PFHA reinstate the Mare's original registration which listed her and Patricia as co-owners. This motivation is evidenced by Clara's motion for summary judgment, in which she asked for injunctive relief requiring the PFHA to reinstate the original registration certificate. [Record No. 60-1, p. 16] Accordingly, Clara unsuccessfully attempted to overturn an Association decision or action.

## IV.

Notwithstanding the foregoing analysis, the PFHA must demonstrate that its requested attorney's fees are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 293 (Ky. 1991). In support of its fee request, the PFHA has provided an affidavit from Attorney Joseph Tucker, who is a partner at Dinsmore & Shohl LLP, in Louisville, Kentucky. [Record No. 84-2] Tucker reports that he and Attorney Paige Johnson worked on this matter from March 2018 through July 2019, for a total of 483.81 hours. [Record Nos. 84-2, 90-1] Tucker's standard hourly rate is $525.00 per hour, and Johnson's is $255.00 per hour. However, Tucker reports that the PFHA received a substantial discount and was billed at a blended rate of $240.00 per hour of attorney time. This results in a fee request totaling $116,114.40.

The starting point for determining reasonable attorney's fees is the lodestar amount, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. Reasonableness of the hourly rate is determined by looking to "the prevailing market rates in the relevant community." *Marshall v. Rawlings Co., LLC*, 2018 WL 3028574, at *4 (W.D. Ky. June 18, 2018) (quoting *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 552 (2010)). It is customary for attorneys to increase their hourly rate based upon their level of experience. *Elliot v. Metro. Life Ins. Co.*, No. 04-174-DLB, 2007 WL 4192001 (E.D. Ky. Nov. 13, 2007). While the PFHA does not address this issue in its motion or the accompanying affidavit, it appears that Tucker has at least twenty years of

practice experience and Johnson has considerably less, having graduated from law school in 2017.³

District courts have "considerable discretion to determine what constitutes a reasonable hourly rate for an attorney." *Flynn v. Borders*, No. 5: 06-323-JMH, 2007 WL 862548, at *2 (E.D. Ky. Mar. 20, 2007) (quoting *Wayne v. Village of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994)). Having reviewed the caselaw and drawing from its own experience, the Court concludes that $240.00 per hour is a reasonable blended hourly rate for an attorney performing this type of work in the Louisville, Kentucky area. *See Herdguard, LLC v. NXT Generation Pet, Inc.*, No. 5: 16-cv-468-JMH, 2019 WL 3082458, at *6 (E.D. Ky. July 15, 2019) (courts in Eastern District of Kentucky have approved rates of $300 per hour for experienced attorneys and between $150 and $180 per hour for associates); *Marshall*, 2018 WL 3028574, at *7 ($300 to $350 per hour awarded to attorneys of varying experience).; *Elliot*, 2007 WL 4192001, *4 (E.D. Ky. 2007) ($300 per hour awarded to experienced attorney in Louisville).

The PFHA has provided invoices and detailed billing statements demonstrating how much time its attorneys spent working on particular issues. [Record No. 84-4] The plaintiff claims that the number of hours billed by the PFHA's attorneys was unreasonable. This argument is largely based on the plaintiff's assertion that her attorney billed only 197.2 hours, compared with the PFHA's counsels' nearly 500 hours. First, PFHA points out the obvious— that Clara's current counsel began representing her in June 2018, after this action was removed from Florida state court and transferred from the United States District Court in Florida. The

---

³ *See* https://www.dinsmore.com/joseph-n-tucker/, https://www.dinsmore.com/paige-n-johnson/ (last accessed Aug. 13, 2019).

PFHA's attorneys began representing it in March 2018 and worked to move the case to Kentucky, as required by the PFHA rules.

Despite the availability of the PFHA's itemized fee statements and invoices, the plaintiff has not voiced any specific objections to the number of hours expended. For example, she does not assert that any particular charges are duplicative or excessive. *See Wayne v. Village of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994) (district court was required to make specific findings when disallowing attorney's claimed hours). The Court has independently reviewed PFHA's documentation and does not detect excessive or cumulative charges. Further, the Court notes that Attorneys Tucker and Johnson devoted a comparable number of hours to the case, supporting the blended rate of $240.00 per hour.

There is a strong presumption that the lodestar figure represents a reasonable fee. *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 517, 531 (6th Cir. 1994). However, the lodestar amount may be adjusted to account for "various special factors" in the litigation. *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 826 (Ky. 1992). These factors include: amount and character of services rendered; labor, time, and trouble involved; nature and importance of the litigation; responsibility imposed; the value of the property affected by the controversy; skill and experience required in the performance of services; the professional character and standing of the attorneys; and the results secured. *In re Citizen Fidelity Bank & Trust Co.*, 550 S.W.2d 569, 570 (Ky. Ct. App. 1977).

Application of these factors warrants an award of the lodestar amount, as requested. As the PFHA points out, the matter was time and labor intensive. The case has been pending for approximately 17 months and has involved substantial discovery and motion practice. Additionally, counsel secured PFHA's desired result in having the case transferred to this

Court and ultimately obtaining summary judgment in PFHA's favor. To the extent the plaintiff argues that the PFHA's attorney's fees were covered by insurance, she has not explained how this affects her contractual obligation to pay attorney's fees, or how it should factor into the analysis above.

Based on the foregoing, it is hereby

**ORDERED** that Defendant Paso Fino Horse Association's Motion for Attorney's Fees [Record No. 84] is **GRANTED**. The plaintiff shall pay for this defendant's attorney's fees in the amount of $116,114.40.

Dated: August 14, 2019.



Signed By:
*Danny C. Reeves*
United States District Judge